**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| HOLLY MEYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| LAKEPOINT FAMILY PHYSICIANS, P.A., ) | **DEMAND FOR JURY TRIAL** |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT**

The Plaintiff, Holly Meyer, for her cause of action against the Defendant, Lakepoint Family Physicians, P.A., states and alleges as follows:

1. Plaintiff Holly Meyer, an individual female, is a resident of Sedgwick County, Kansas.

2. Defendant, Lakepoint Family Physicians, P.A., is a professional association, organized and existing under the laws of the state of Kansas and conducting business in Sedgwick County, Kansas. Defendant may be served through its resident agent James F. Hesse, at its registered office, 8020 E. Central, Suite 200, Wichita, KS 67206.

3. This Court has federal question jurisdiction over the Equal Pay Act ("EPA" 29 U.S.C. 206(d)) and Fair Labor Standards Act ("FLSA" 29 U.S.C. 201 *et seq.*) claims asserted by Plaintiff.

4. Venue is proper in this Court because a substantial portion of the events forming the basis of the suit occurred in this District.

5. Defendant has gross receipts in excess of $500,000.00 per year and is an enterprise engaged in commerce or the production of goods in commerce.

1

6. Defendant has more than 15 employees.

7. Plaintiff began working for Defendant in January 2014. She was hired to be the Practice Administrator. Plaintiff's job involved interstate commerce. Her starting annual salary was $70,000.

8. Prior to beginning her employment with Defendant, Plaintiff had 12 years of experience in medical practice management, including the prior one and a half years as the interim Office Manager at Newton Medical Center. Plaintiff earned her Master's Degree in Health Care Leadership (MHCL) from Friends University in 2009. She had also earned her Certified Professional Coder (CPC) certification from the American Academy of Professional Coders in 2003. While employed by Defendant, Plaintiff obtained her Certified Medical Practice Executive (CMPE) certification in 2017.

9. Plaintiff was good at her job and routinely received positive reviews from Defendant. Defendant's owners commented that Plaintiff was an overall, excellent manager; that her performance fully met Defendant's needs and expectations; that Plaintiff was a valuable asset to Defendant; and that she was professional, hard-working, reliable, and knowledgeable.

10. Defendant's Practice Administrator prior to Plaintiff was a man named Louis Ryan. He began working for Defendant in 2011. His starting annual salary was $72,000.

11. In 2015, after one year on the job as Defendant's Practice Administrator, Plaintiff's annual salary was increased to $71,190.00.

12. In 2012, after one year on the job as Defendant's Practice Administrator, Louis Ryan's annual salary was increased to $75,000.00.

13. In 2016, after two years on the job as Defendant's Practice Administrator, Plaintiff's annual salary was increased to $72,613.88.

14. In 2013, after two years on the job as Defendant's Practice Administrator, Louis Ryan's annual salary was increased to $80,000.00.

15. In 2017, after three years on the job as Defendant's Practice Administrator, Plaintiff's annual salary was increased to $74,066.16—which is less than her male predecessor's salary after only one year on the job.

16. Plaintiff was aware that she was paid substantially less than her male predecessor even though they both performed the same job taking into consideration the skills, duties, supervision, effort and responsibilities of their positions; and the conditions were basically the same, with Plaintiff actually having more doctors in the practice to manage during her tenure. In or around 2017, Plaintiff asked Defendant why she was paid less than her male predecessor. She was told that the male predecessor was a Registered Nurse. But the Practice Administrator position did not require an RN license and an RN license did not appreciably contribute in any way to the duties of the Practice Administrator position.

17. On March 16, 2018, Plaintiff emailed Defendant's owners a request that she be given a raise in her annual salary to $80,000, which was the last salary of her male predecessor in 2013. Plaintiff explained that Defendant's practice has performed very well under Plaintiff's leadership and that she didn't think it was fair that she was compensated less than the comparator employee.

18. Defendant's owners emailed Plaintiff on March 20, March 27, and April 3, 2018, advising each time that Defendant's owners planned to meet soon to discuss Plaintiff's March 16 email.

19. On April 11, 2018, Plaintiff was summoned to a meeting with two of Defendant's owners – Kurt Hesse and Jennifer Halabi. Halabi told Plaintiff that "the partners have decided that

you're not the right fit for this position, so we are going to let you go.  Today will be your last day."  When Plaintiff asked why her employment was being terminated, Halabi responded "we just don't feel like you're the right fit."

20. Plaintiff was performing work which was substantially equal to that of employees of the opposite sex, namely her male predecessor.  The conditions where Plaintiff and her male predecessor performed the work were basically the same.  Employees of the opposite sex, namely her male predecessor, were paid more than Plaintiff.  Defendant is liable to Plaintiff for damages she incurred as a result of Defendant's unfair pay practices under the EPA.

21. Plaintiff engaged in activity protected by the FLSA and the EPA when she raised the issue of pay disparity between herself and her male predecessor.  Defendant responded by terminating Plaintiff's employment, which is obviously an adverse employment action.  Plaintiff's protected activity was the cause of Defendant's decision to terminate her employment.  Defendant is liable to Plaintiff for damages she incurred as a result of being retaliated against in violation of the EPA and FLSA.

22. Defendant's violations of the EPA which caused Plaintiff damages were willful.

WHEREFORE, Plaintiff Holly Meyer prays that the Court enter judgment in her favor, and against Lakepoint Family Physicians, P.A., for damages and liquidated damages in excess of $75,000.00, attorneys' fees, costs, equitable relief, and other relief as the Court deems just and equitable.

**Plaintiff demands trial by jury and she designates Wichita, KS as the place of trial.**

DATE: May 4, 2018.

SUBMITTED BY:

GRAYBILL & HAZLEWOOD, LLC

    /s/ Nathan Elliott
Sean M. McGivern, #22932
Nathan R. Elliott, #24657
218 N. Mosley
Wichita, KS 67202
Telephone: (316) 266-4058
Facsimile: (316) 462-5566
sean@graybillhazlewood.com
nathan@grabillhazlewood.com
***Attorneys for Plaintiffs***
